# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01782-COA

| | |
|---|---|
| WILLIAM HENDERSON A/K/A WILLIAM E. HENDERSON A/K/A WILLIAM EARL HENDERSON | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 04/09/2013 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | AKILLIE MALONE OLIVER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF STATUTORY RAPE AND SENTENCED AS A HABITUAL OFFENDER TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE BENEFIT OF PAROLE OR SUSPENSION OF SENTENCE |
| DISPOSITION: | AFFIRMED: 06/23/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     William Henderson was convicted of the statutory rape of his thirteen-year-old cousin,

Abby.[1]  She testified that Henderson had repeatedly displayed a pistol to intimidate her into having sex with him.[2]  After their final encounter was interrupted, Henderson literally jumped out the window of the victim's bedroom, leaving behind some of his clothes and a condom wrapper bearing his fingerprint.  On appeal, he raises four varied issues.  We find no merit to any of them, and so we affirm Henderson's conviction and sentence.

## DISCUSSION

### 1. Admission of the Letter

¶2.     The trial court admitted into evidence a handwritten letter given by Henderson to a jailmate to be delivered to a friend Henderson had visited the day of his final sexual encounter with Abby.  In the letter, Henderson asked the friend to testify in his defense and corroborate his account that he had left the friend's residence with a girlfriend.  It closed by asking the friend not to say anything about a gun.  The letter was delivered, but the friend's mother found it; and it ultimately made its way to the authorities.  It was offered into evidence by the prosecution and was admitted into evidence over Henderson's objection.  The friend testified at trial and contradicted the narrative of the letter in material respects.

¶3.     A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion.  *Gillett v. State*, 56 So. 3d 469, 494 (¶61) (Miss. 2010).

---

[1] This Court uses fictitious names to protect the identity of minor victims of sexual abuse.

[2] Henderson was also tried for two counts of sexual battery, but the jury could not reach a verdict on those counts.

¶4. The cellmate testified that Henderson gave him a letter and that he delivered it to the friend. The friend testified that the letter was the one delivered to him by the cellmate on Henderson's behalf. Henderson contends that the letter was not properly authenticated because the handwriting was never confirmed to be his. Henderson's position is, it seems, that Mississippi Rule of Evidence 901(b)(2) is the only way a handwritten note could have been authenticated. Rule 901(b)(2) does permit authentication of a handwriting by nonexpert opinion testimony. But Rule 901(b) makes it clear that 901(b)(2) is an "example" which is provided "[b]y way of illustration only, and not by way of limitation."

¶5. Rule 901(a) outlines the relevant standard for admission: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." At trial, the prosecution never claimed to authenticate the letter by way of handwriting, contending instead that it was authenticated by the chain of custody and by its subject matter. Henderson waves this away by simply asserting, without citing any relevant authority and without further argument, that "[i]t is not enough that Henderson is alleged to have given this letter to someone in order to have it delivered" and that "it is immaterial that the letter itself contained a desire for [the friend] to testify in Henderson's trial."

¶6. [T]here is a presumption that the judgment of the trial court is correct and the burden is on the Appellant to demonstrate some reversible error to [the appellate court]." *Birkhead v. State*, 57 So. 3d 1223, 1231 (¶28) (Miss. 2011). Accordingly, Mississippi Rule of

3

Appellate Procedure 28(a)(6) requires that the appellant's argument "contain the contentions of appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes, and parts of the record relied on." This rule "does not simply require a party to mention authority; the authority must be used to develop the argument in a meaningful way." *Archer v. State*, 118 So. 3d 612, 621 (¶29) (Miss. Ct. App. 2012) (citation omitted).

¶7.     Raising an issue on appeal requires more than the announcement of a position, and the failure to affirmatively demonstrate error waives the issue for our consideration. *Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App. 2014).

### 2. The Sleepy Juror

¶8.     Henderson next argues that the trial court erred in not sua sponte dismissing a juror Henderson alleges was sleeping during the trial. Twice during the trial, the judge interrupted the proceedings to check on one of the jurors.[3] The first time, she stated:

> THE COURT:     [Juror], you've got to stay with us.
>
> JUROR:     Yes, ma'am.
>
> THE COURT:     Keep your eyes open so I know you're listening.

Subsequently, the prosecutor asked for a recess after noting that the juror was holding his head in his hand. The prosecutor expressed concern that the juror may have been asleep.

---

[3] The judge referred to the juror by his surname, but there were two jurors with that name. From the context it appears to have been the same individual in both instances.

After the recess, the judge was again concerned:

> THE COURT:     [Juror], still listening[?]
>
> JUROR:     Yes.
>
> THE COURT:     Keep your eyes open.  Keep your eyes open for me.

When adjourning for the day, the judge directed these words to the juror in question: "[Juror,] if you go home now, go to bed.  I bet you'll do better tomorrow."

¶9.     Henderson never objected, interjected, or otherwise expressed any concern about the juror in question during the trial.  Nonetheless, on appeal he claims that the juror was asleep during critical parts of the case, and he contends that the trial court had an obligation to dismiss the juror sua sponte.

¶10.     We find no merit to this argument.  The record reflects only suspicion that the juror was sleeping – and at two or three discrete points in time, not for extended periods, as Henderson alleges.  To the extent the record is unclear about what actually occurred, it is because Henderson did not raise the issue before the trial court; had he done so, the court could have inquired further, made express findings of fact, and taken action to prevent any error before it occurred.

¶11.     Without a timely request from Henderson, the trial court was under no obligation to remove the juror suspected of sleeping.  *Norris v. State*, 490 So. 2d 839, 846 (Miss. 1986).  We find no merit to these belated complaints.

### 3.  Police Interview

¶12.   Next, Henderson contends that the trial court erroneously admitted into evidence an audio recording of a police interview with the victim, Abby. The recording was offered as a prior consistent statement under Mississippi Rule of Evidence 801(d)(1)(B) to rebut the repeated claims of Henderson's attorney that Abby had recently fabricated some of the details of her account – primarily that Henderson used a gun to intimidate her into having sex with him.

¶13.   On appeal Henderson ignores this basis for admitting the recording and instead argues that Abby's statement could not be admitted under the tender-years exception to the rule against hearsay. *See* M.R.E. 803(25). This is a curious contention since, so far as we can see, no one had previously suggested that Abby was of tender years. A child is presumed to be of tender years if she is younger than twelve years of age, *Veasley v. State*, 735 So. 2d 432, 433 (¶1) (Miss. 1999), but Abby was fourteen when she was interviewed. Neither the State nor the trial court ever suggested Rule 803(25) was the basis for admitting the recording.

¶14.   Henderson otherwise only offers the bald assertion that "[n]o other hearsay exception applies." Even if that were true, Rule 801(d) explicitly defines prior consistent statements as nonhearsay, and since such statements are not hearsay, no exception to the rule against hearsay is required. Henderson has failed to show any error in the admission of the interview.

### 4. Sentencing as a Habitual Offender

¶15. Finally, Henderson contends that the trial court did not have before it sufficient evidence to sentence him as an habitual offender, because "there was absolutely no evidence admitted during the sentencing hearing." Henderson does not acknowledge in his brief that there is extensive documentation of his prior offenses in the record – the documents were just accepted into evidence prior to the sentencing hearing.

¶16. When the same issue was squarely presented to the Mississippi Supreme Court last year, it found the admission of the evidence prior to the sentencing hearing to be irregular, but not reversible error. *Conner v. State*, 138 So. 3d 143, 150-52 (¶¶17-26) (Miss. 2014). It bears mentioning that although Henderson does not cite *Conner* or explain how its holding relates to his arguments, Henderson's appellate counsel was counsel of record in *Conner*, and the decision in *Conner* was handed down and the mandate issued several months before Henderson's brief was submitted.

¶17. Various documents establishing that Henderson is a habitual offender were made a part of the record, without objection, during the pretrial hearing to amend Henderson's indictment to charge him as a habitual offender. During the sentencing hearing, the prosecutor asked the trial court to take judicial notice of the exhibits previously admitted. Not only did this not garner an objection from Henderson, but his attorney conceded that Henderson was a habitual offender; she stated that "the convictions speak for themselves." Henderson only contested the timing of the order amending the indictment. In his brief on appeal, Henderson ignores all of this, repeatedly contending that the evidence had to be

admitted *during the sentencing hearing.* This argument was rejected in *Conner*. *See id.*

¶18. As in *Conner*, this issue is procedurally barred because it was not raised in the trial court. *Id.* at 150 (¶19). Furthermore, it is plain from the transcript that the trial judge examined the documents at the sentencing hearing, and they were made part of the record. *Id.* at 152 (¶25). This issue is without merit.

¶19. **THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF STATUTORY RAPE AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE BENEFIT OF PAROLE OR SUSPENSION OF SENTENCE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.**