# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00809-COA

LATOYA ATKINS RICHARDS A/K/A LATOYA ATKINS RICHARD AND FLOYD RICHARDS A/K/A FLOYD LEE RICHARDS                                      APPELLANTS

v.

STATE OF MISSISSIPPI                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2017 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF NICK CRAWFORD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 04/23/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Floyd Richards (Floyd) was indicted for attempted sexual battery of his stepdaughter, M.A., who was fourteen at the time of the disclosure of the allegations.[1] M.A.'s mother, Latoya Richards (Latoya), was jointly indicted with Floyd on a separate charge of contributing to the neglect and delinquency of a child. After a joint trial, Floyd was

---

[1] Actual names are not revealed in sexual-abuse cases.

convicted of the lesser offense of touching a child for lustful purposes, and Latoya was convicted of the crime charged. Both Defendants, each represented by separate counsel, appeal, raising numerous issues. For the reasons discussed below, we affirm both convictions and sentences.

**FACTS**

¶2. In the fall of 2015, Willie Joe McCall taught a "Healthy Relationships" class at Shaw High School in Shaw, Mississippi. McCall and the students discussed several topics, such as dating violence, sexual assault, and stalking. M.A. was fourteen years old at the time and a student in McCall's class. On December 11, 2015, McCall gave the students a test containing several "yes" or "no" questions. One question asked if the student had witnessed or experienced child abuse or sexual abuse, and, if so, by whom. M.A. marked "yes" and wrote "my stepdad."

¶3. McCall informed the principal, Daphne Young, of M.A.'s answers and gave Young M.A.'s test. Young and the school counselor met with M.A. immediately. During the meeting, they noticed M.A.'s legs were bruised. After speaking with M.A., Young reported the incident to the Department of Human Services (DHS).

¶4. DHS assigned Bertina White as M.A.'s caseworker. Based on the allegations of sexual abuse, White scheduled a forensic interview for M.A. at The Family Resource Center of Northeast Mississippi Children's Advocacy Center in Tupelo, Mississippi. Officer Ray Morris of the Bolivar County Sheriff's Department was contacted about the allegations. On

2

December 29, 2015, Officer Morris and White both observed M.A.'s interview with Marie Frison, the facility's forensic interviewer. After the interview, Frison generated a three-page forensic interview summary detailing M.A.'s intake information and a summary of her statements.

¶5.     M.A. testified at trial. She began her testimony with the incident that led to Floyd's indictment. M.A. testified that sometime after entering ninth grade but before Thanksgiving in 2015,[2] she rode with Floyd to the Dollar General to get medicine. According to M.A., after leaving the store, Floyd "pretended" like something was wrong with his Jeep. Floyd stopped the Jeep, turned it off, and asked M.A. to touch his penis. M.A. testified that she touched his penis. Floyd then made M.A. get in the back seat and take off her clothes. Floyd and M.A. both crawled into the back seat, and M.A. removed her clothing. Floyd remained clothed but had his penis out of his pants. M.A. testified that Floyd was trying to get on top of her, but she kept pushing him away. She also testified that she tried to open the door. M.A. testified that Floyd's penis touched the top of her vagina but that there was no penetration. Eventually, Floyd ejaculated. He then turned the Jeep back on and drove home.

¶6.     M.A. testified to several incidents before the "Jeep incident" that caused her to be afraid of what Floyd may do to physically or sexually abuse her. One time, M.A. and her brother, K.A., came home from school, and Floyd sent K.A. to his room. Floyd then ordered

---

[2] Floyd was indicted for committing the crime of attempted sexual battery of M.A. between August 1, 2015, and November 25, 2015.

M.A. to walk around the living room naked and then lie on the couch, where he tried to have sex with her. M.A. testified she pushed him off of her. She also testified that her mother was out of town that day. On another occasion, Floyd touched M.A.'s chest area while she was "picking his face." M.A. also testified that Floyd had shown her pornography in the past (before the "Jeep incident"). M.A. testified that she told Latoya "three or four" times about the abuse. Each time, Latoya would tell Floyd what M.A. said, and Floyd would "beat up" M.A. M.A. further testified that she and K.A. witnessed Floyd abuse their mother.

¶7.     M.A.'s brother K.A. was the only defense witness. He testified that nothing ever happened between M.A. and Floyd and that M.A. and Floyd were never alone together. K.A. also testified that Floyd never harmed him or his mother.

¶8.     The jury found Floyd guilty of the lesser offense of touching a child for lustful purposes. The circuit court sentenced Floyd to serve fifteen years in the custody of the Mississippi Department of Corrections (MDOC). The jury also found Latoya guilty of contributing to the neglect and delinquency of a child. Latoya was sentenced to serve ten years in the custody of the MDOC. Latoya and Floyd each filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which were denied.

**DISCUSSION**

¶9.     Latoya and Floyd raise one issue together and several other separate issues on appeal. In the interest of simplicity, their shared issue will be discussed first, and then their separate issues will be addressed below.

4

### 1. *Frison's Testimony*

¶10. Latoya and Floyd both argue that the circuit court erred in allowing Frison to testify to M.A.'s reported time frame of the "Jeep incident." Specifically, both Defendants argue that the testimony was hearsay.

¶11. On cross-examination, Floyd's attorney attempted to use the first page of Frison's forensic-interview summary to impeach M.A. with an allegedly inconsistent statement—that M.A. said that the "Jeep incident" occurred on December 12, 2015, and not between August 1, 2015, and November 25, 2015, as alleged in the indictment. The first page of the summary document contained DHS's referral information, which stated that the sexual-abuse allegation stemmed from an incident occurring on December 12, 2015. The State objected to the use of the document as improper impeachment since M.A. did not provide the information on the first page of the forensic-interview summary nor was the document prepared by her. The trial court overruled the State's objection and allowed M.A. to answer questions concerning the information on the first page of the summary. When asked if she told Frison that she was sexually assaulted on December 12, M.A. responded, "Yes." But on redirect examination, the State asked M.A. if December 12, 2015, was the date of the "Jeep incident." M.A. testified that it was not. She clarified the "Jeep incident" happened before December.

¶12. After the jury heard the apparent confusion from the impeachment of M.A., the State called Frison to testify in an effort to clarify what M.A. actually said in the forensic interview

since Floyd's attorney had "opened the door" as to the summary. Latoya's attorney objected at first but eventually agreed that the witness could testify "if it's only to clarify the statement as to the date of the incident." Floyd's attorney followed with, "I don't have an objection to putting the child forensic interviewer on the stand to clarify the information that she received from the [DHS] as to the date that the minor child was sexually assaulted." Oddly, when Frison began testifying to clarify the date of the incident, both defense attorneys objected. The court overruled the objections, finding the statement was a prior consistent statement under Mississippi Rule of Evidence 801(d)(1)(B).

¶13. "Appellate review of determinations of whether to admit hearsay is limited to whether an error of law occurred, and if it did not, then appellate review is limited to the abuse of discretion standard." *Shirley v. State*, 843 So. 2d 47, 48 (¶3) (Miss. Ct. App. 2002) (citing *Baine v. State*, 606 So. 2d 1076, 1078 (Miss. 1992)).

¶14. A witness's prior statement is not hearsay when:

> The **declarant testifies** and is **subject to cross-examination** about [the] prior statement, and the **statement** . . . is **consistent with the declarant's testimony** and is **offered** to **rebut** an express or **implied charge** that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . .

M.R.E. 801(d)(1)(B) (emphasis added).

¶15. "The Mississippi Supreme Court has explained that '[e]vidence of prior consistent statements made by the witness is not evidence of the fact testified to by the witness, but may be offered for the sole purpose of supporting the testimony of the witness whose veracity has

been attacked.'" *Herrington v. State*, 242 So. 3d 909, 918 (¶39) (Miss. Ct. App. 2017) (quoting *Stampley v. State*, 284 So. 2d 305, 307 (Miss. 1973)); *see, e.g.*, *Henderson v. State*, 185 So. 3d 1038, 1041 (¶12) (Miss. Ct. App. 2015) (affirming the State's offering of an audio recording as a prior consistent statement to rebut the repeated claims of the defendant's attorney that the rape victim had recently fabricated some of the details of her account).

¶16.    M.A. was present in the courtroom and subjected to cross-examination. Her credibility was attacked about a "prior statement" on cross-examination about the issue of the date in the indictment, and the State used a prior consistent statement M.A. made to rebut the alleged fabrication or improper motive alleged by Floyd.  Notably, the defense used the document to impeach M.A. with a statement that was actually not her statement.[3]  The defense's attempted use of that document to impeach M.A., who never saw that document, who did not create that document, and who questionably did not even provide the information that went into the first page of that document, could certainly have been held unfair and as improper impeachment of M.A. and not allowed by the court.  But the court allowed the impeachment over the objection of the State, and it certainly did not err when it allowed the State to introduce a prior consistent statement from the same document Floyd used to attack M.A.'s credibility.  Further, the statement offered by the State on redirect was not hearsay under the Rules of Evidence and was used to counter the attack by the defense.

¶17.    Moreover, "[e]vidence, even if otherwise inadmissible, can be properly presented

---

[3] DHS provided the date December 12, 2015, on the first page.

7

where the defendant has 'opened the door.'" *Washington v. State*, 726 So. 2d 209, 216 (¶34) (Miss. Ct. App. 1998) (quoting *Crenshaw v. State*, 520 So. 2d 131, 133 (Miss. 1988)). By attempting to impeach M.A. with the first page of the forensic-interview summary, the defense clearly opened the door to testimony regarding her prior consistent statement within that same document. As provided in Mississippi Rule of Evidence 106, "[I]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement— that in fairness ought to be considered at the same time."

¶18. Trials are often chaotic and sometimes intensely adversarial. The Rules of Evidence are designed to bring order and fair play to the trial process. Rule 106 is grounded in the premise that one side should not be able to offer part of a document for a particular point and prevent the other side from contesting that point, especially if the same document can clarify the issue. The use of one part of the document by the defense to attack M.A.'s credibility opened the door for the State to use other parts of the same document to rehabilitate her.

¶19. Further, the defense is responsible for the initial introduction of Frison's forensic-interview summary. "A defendant cannot complain on appeal of alleged errors invited or induced by himself." *Caston v. State*, 823 So. 2d 473, 502 (¶101) (Miss. 2002) (quoting *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988)). In accordance with Rule 801(d)(1)(B) and Rule 106, we find no abuse of discretion in the circuit court's admittance of M.A.'s prior consistent statement.

### 2. *Latoya's Indictment*

¶20. Latoya argues that the indictment was insufficient to charge her with permitting the continuing sexual abuse of a minor for whom she was a parent or guardian.

¶21. Mississippi Code Annotated section 97-5-39(1)(e) (Rev. 2014) provides that "[a] parent, legal guardian or other person who **knowingly permits** the continuing physical or sexual abuse of a child is guilty of neglect of a child and may be sentenced to imprisonment in the custody of the Department of Corrections for not more than ten (10) years or to payment of a fine of not more than Ten Thousand Dollars ($10,000.00), or both." (Emphasis added).

¶22. Our supreme court has held that an indictment is generally sufficient if it tracks the language of the relevant criminal statute. *Tran v. State*, 962 So. 2d 1237, 1241 (¶17) (Miss. 2007). However, "using the exact language from the statute is not necessary if the words used have substantially the same meaning and the indictment is specific enough to give the defendant notice of the charge against her." *State v. Hawkins*, 145 So. 3d 636, 640 (¶8) (Miss. 2014) (citing *Madere v. State*, 794 So. 2d 200, 212 (¶33) (Miss. 2001)).

¶23. At the time of Latoya's indictment, the Uniform Rule of Circuit and County Court Practice 7.06 required that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged and [] fully notify the defendant of the nature and cause of the accusation. . . . Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." Latoya's indictment

9

read as follows:

> That Latoya Atkins Richards . . . feloniously and **knowingly** fail[ed] to act on disclosure by [M.A.] to her and or observation of abuse to [M.A.] by Floyd Richards, and thereby did **contribute to, cause or allow to be caused** the continuing physical and/or . . . sexual abuse of her child, [M.A.].

(Emphasis added).

¶24. Latoya argues that the indictment omits an essential element of the crime because it lacks the word "permits." We find Latoya's argument unpersuasive. Black's Law Dictionary defines the word "permit" as "to allow." Black's Law Dictionary 1322 (10th ed. 2009). It is inconceivable how Latoya did not know or understand the indictment charged her with allowing the abuse of M.A. to continue. The elements of the statute are set out in full and with specificity in Latoya's indictment, as it stated Latoya "knowingly" allowed M.A.'s "continuing physical" or "sexual abuse" by Floyd.

¶25. Within her argument, Latoya claims that the indictment led to a faulty jury instruction because the jury instruction tracked the language of the indictment. However, the defense did not object to the jury instruction at trial. Consequently, the issue is waived for consideration on appeal. "It is well established that failure to object timely to a jury instruction at trial waives the issue on appeal." *Buchanan v. State*, 84 So. 3d 812, 814 (¶8) (Miss. Ct. App. 2011).

¶26. While it is better practice to use the language from the statute in the indictment, words that clearly convey the same meaning certainly notify a defendant of the substance and nature of the charges against the defendant. To hold that the indictment in this case failed to notify

10

Latoya of the charges against her due to the use of the word "allow" instead of the word "permit" would put form over substance and create an unnecessarily burdensome precedent. Accordingly, we find the indictment was sufficient to fully notify Latoya of the "nature and cause of the accusation" against her.

### 3. Prior Bad Acts

¶27. At a pretrial hearing, the State offered evidence of Floyd's past sexual abuse of M.A. to show Floyd's intent, motive, opportunity, plan, and preparation to "groom" M.A. for the "Jeep incident." The State also offered evidence of Floyd's past physical abuse to show Floyd's intent and motive and to explain M.A.'s fear of Floyd. Floyd's attorney objected, arguing that the evidence of Floyd's prior bad acts violated Mississippi Rule of Evidence 404(b). The court found the evidence relevant and admissible under Rules 403 and 404(b). On appeal, Floyd argues the court's decision was error.

¶28. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses his discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶29) (Miss. 2005)).

¶29. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

11

M.R.E. 404(b).

¶30. Before admitting evidence of prior bad acts, a circuit court must filter the evidence through Rule 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008). If a circuit court finds the probative value outweighs the prejudicial effect, the evidence will be admitted, provided the jury is given a limiting instruction regarding the evidence in question. *Id.*

¶31. On appeal, Floyd's attorney argues that the circuit court made "[n]o mention of relevancy, the balancing test filter or any other reason as to why the evidence would be admissible." From our review of the record, we find his contention inaccurate. The court, before the testimony was allowed to be presented to the jury, required the State to indicate the relevancy and the Rule 404(b) exception for each particular prior bad act. And during the trial, the court conducted a Rule 403 balancing test. The court held that "in weighing the probative value under Rule 403, the court finds that it's relevant and probative." Further, once that determination was made, the court provided the jury with an oral limiting instruction at the time of admission and a written limiting instruction to the jury with the other jury instructions.

¶32. In sexual-abuse cases, prior bad acts may be admissible to show the defendant's intent, plan, preparation, motive, and opportunity to "groom" the victim to allow the defendant better access and opportunity to commit the sexual acts upon a child. *See, e.g.,*

12

*Fountain v. State*, 85 So. 3d 913, 918-20 (¶¶17-21) (Miss. Ct. App. 2012). Typically, the sexual act is the culmination of a process that the defendant put the child through over days or months to gain control, access, and opportunity over the child. That experience, lived out by the child, gives meaning and context to the child's story. "Evidence of other bad acts is admissible in order to tell a complete story to avoid confusion among jurors.'" *Brown v. State*, 890 So. 2d 901, 912 (¶56) (Miss. 2004) (quoting *Simmons v. State*, 805 So. 2d 452, 481 (¶56) (Miss. 2001)). "[W]hen dealing with closely related acts, the State 'has a legitimate interest in telling a rational and coherent story of what happened.'" *Newell v. State*, 175 So. 3d 1260, 1276 (¶34) (Miss. 2015) (quoting *Welde v. State*, 3 So. 3d 113, 117 (¶14) (Miss. 2009)).

¶33. We find that the evidence of Floyd's past sexual and physical abuse of M.A. was necessary to show Floyd's intent as to M.A. Further, Floyd's prior bad acts were admissible to show intent, plan, preparation, motive, and opportunity to "groom" M.A. for the "Jeep incident," for which he stood indicted. Further, M.A.'s testimony allowed the jury to have a complete story of the events leading up to the "Jeep incident." Without that context, the jury may have been confused as to why M.A. removed her clothes in the Jeep simply because Floyd told her to, why she failed to fight or resist, and why she did not immediately report the incident.

¶34. Finally, it is important to note that the Mississippi Supreme Court has authorized the admission of evidence of other victims' testimonies if the State has proven a similarity of

13

conduct or purpose under Rule 404(b). *See Boggs v. State*, 188 So. 3d 515, 521 (¶18) (Miss. 2016); *see also Young v. State*, 106 So. 3d 775, 780 (¶17) (Miss. 2012); *Derouen*, 994 So. 2d at 756 (¶20). If Rule 404(b) allows other victims' testimonies into evidence, then surely that same reasoning allows the present victim to describe the bad acts suffered at the hands of the defendant if offered to prove plan, intent, or motive. After review of the transcript and evidence in the case, we find that the circuit court did not abuse its discretion in admitting evidence of Floyd's prior bad acts of M.A., which led to and told the complete story of the sexual and physical abuse of M.A.

4.    *Sufficiency of the Evidence*

¶35.   Floyd also argues the State's evidence was insufficient to convict him of touching a child for lustful purposes.

¶36.   "When th[e] Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The relevant inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008). "This Court will reverse and render only when the facts point so overwhelmingly in favor of the defendant that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty." *Id*.

¶37.   Mississippi Code Annotated section 97-5-23(1) (Rev. 2014) reads:

Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, or with any object, any child under the age of sixteen (16) years, with or without the child's consent, or a mentally defective, mentally incapacitated or physically helpless person as defined in Section 97-3-97, shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.

Miss. Code Ann. § 97-5-23 (Rev. 2014).

¶38.    "The jury is the sole judge of the credibility of witnesses, and its decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Jones v. State*, 252 So. 3d 574, 587 (¶54) (Miss. 2018).  Further, "the jury . . . is free to accept or reject all or some of the testimony given by each witness." *Young v. State*, 236 So. 3d 49, 57 (¶35) (Miss. 2017).

¶39.    Here, M.A. testified that the "Jeep incident" occurred after she entered ninth grade but before Thanksgiving.  M.A. described the incident in great detail, stating that Floyd tried to have sex with her and that his penis touched the top of her vagina.  M.A.'s brother K.A. testified to the contrary, stating that M.A. and their stepfather were never alone together. Although M.A. and K.A.'s testimonies conflicted, the jury was entitled to believe whomever's story they found to be most credible.  Further, M.A.'s testimony was consistent with the testimony provided by other State witnesses.

¶40.    Considering the evidence in the light most favorable to the State, the essential

15

elements of touching a child for lustful purposes could have been found by a rational juror based on the evidence presented at trial. Accordingly, we find that sufficient evidence existed to convict Floyd for touching a child for lustful purposes.

5. *Overwhelming Weight of the Evidence*

¶41. Floyd next argues that the jury's verdict is against the overwhelming weight of the evidence and that the circuit court erred in denying his motion for a new trial.

¶42. As an appellate court, we review the evidence in the light most favorable to the verdict to determine whether the verdict is so contrary to the overwhelming weight of the evidence that allowing it to stand would amount to an unconscionable injustice. *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). "When the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Id*. at 292 (¶20). We review the circuit court's decision to grant or deny a new trial for an abuse of discretion. *Id*. at (¶21).

¶43. Accepting the evidence supporting the jury's verdict as true in this case, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice. M.A. testified that Floyd's penis touched her vagina during the "Jeep incident," which occurred after she entered ninth grade but before Thanksgiving. The conflicting portions of M.A.'s testimony were thoroughly presented to the jury. The jury properly resolved the conflicting testimony and found Floyd guilty of touching a child for lustful purposes. Accordingly, we find that the

16

circuit court did not err in denying Floyd's motion for a new trial and affirm his conviction and sentence.

### 6. Cumulative Error

¶44. Last, Floyd argues that the errors that occurred in his case, when taken together, warrant reversal. Under the cumulative-error doctrine, "individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007). However, "where there is no error in part, there can be no reversible error to the whole." *Warren v. State*, 187 So. 3d 616, 628 (¶34) (Miss. 2016) (quoting *Harris v. State*, 970 So. 2d 151, 157 (¶24) (Miss. 2007)). Since we have identified no individual errors, there can be no cumulative error.

## CONCLUSION

¶45. Because we find no error, we affirm Floyd's and Latoya's convictions and sentences.

¶46. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

17