991 So.2d 629 (2008)
Joseph Glenn JONES a/k/a Joseph G. Jones a/k/a Joseph Jones, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01243-COA.
Court of Appeals of Mississippi.
April 15, 2008.
Rehearing Denied July 22, 2008.
Certiorari Denied October 2, 2008.
*631 Leslie S. Lee, Jackson, Brenda Jackson Patterson, Michael Duane Mitchell, attorneys for appellant.
Laura Hogan Tedder, Office of the Attorney General, attorney for appellee.
Before LEE, P.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Joseph Glenn Jones appeals his conviction and sentence ordered by the Jones County Circuit Court after a jury found him guilty of sexual battery of a minor at least fourteen years of age but under sixteen years of age. He was sentenced to thirty years' imprisonment with fifteen years to serve and fifteen years suspended. Jones raises two issues on appeal: (1) whether the verdict was contrary to the weight of the evidence because all the evidence supported the victim's being thirteen at the time of the offense rather than fourteen and (2) whether the trial court erred in dismissing a juror and replacing her with an alternate juror. Finding no reversible error, we affirm Jones's conviction and sentence.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On May 17, 2006, Jones was tried for sexual battery of a minor pursuant to Mississippi Code Annotated subsection 97-3-95(1)(c) (sexual battery of a minor at least fourteen years of age but under sixteen) and, alternatively, Mississippi Code Annotated subsection 97-3-95(1)(d) (sexual battery of a minor under fourteen years of age). The State called ten witnesses in its case-in-chief, and the defense called no witnesses.
¶ 3. First to testify was Tyrone Stewart, captain of the investigative division of the Laurel Police Department. Stewart testified that, during the early part of 2000, he received a complaint concerning a thirteen-year-old girl, Susie,[1] having sex with an older man, Jones. Stewart obtained Susie's medical records and determined that Susie had given birth to a premature, stillborn child. However, due to a lack of physical evidence, the case was put on hold. The investigation was revived in 2004, and it was discovered that a slide containing a sample of tissue from Susie's baby was stored at the South Central Regional Medical Center (SCRMC). The sample was obtained so that DNA testing could be performed. A drink can reportedly used by Jones was also obtained for comparison DNA testing.
¶ 4. Susie, the victim, testified that when she was thirteen years old, she began having sex with Jones. She stated that one day she was walking from a friend's house when Jones drove up to her and asked her if she wanted a ride. The two subsequently began having sex and did so on more than one occasion. Susie testified that on or about July 30, 1999, she discovered that *632 she was pregnant. Susie stated that her birthday was August 5, 1985, and she was thirteen on July 30, 1999. She further testified that on December 27, 1999, when she was fourteen years old, she gave birth to a stillborn child.
¶ 5. Paula,[2] a friend of Susie's, testified that around July 30, 1999, when Susie was thirteen years old, Jones would come by Paula's house and pick up Susie. She stated that Jones picked Susie up on several occasions, both before and after July 30, 1999, and Susie would have money when she returned. She later testified that she did not remember the exact date of July 30, 1999.
¶ 6. Nancy Clark, an employee at the SCRMC's pathology department, testified regarding Susie's medical records pertaining to the birth. She stated that the remains of Susie's baby were logged into the pathology department on December 27, 1999, and the records indicated that the baby was twenty-two weeks old at the time of the birth. Clark admitted that this information came from Susie's obstetrician, not the pathology lab; she could not verify whether the information was correct. Another employee of SCRMC, Lori Kennedy, also testified regarding Susie's medical records. She testified that Susie's hospitalization began on December 26, 1999, and ended on December 28, 1999. During cross-examination, Jones's lawyer questioned Kennedy regarding two documents in Susie's medical records that appeared to contain altered dates. He noted that, on one document, it appeared that someone wrote over "12/25/99" with "4/25/00," and another document had "4/25/99" written on it. According to Jones's attorney, the dates are written in the space designated "EDD" or "estimated date of delivery."[3] Kennedy responded that she could not testify as to whether the dates look altered or as to why they looked altered. It also appeared that "22" was written over another number in the space designated "Wks."
¶ 7. Huma Nasir, a forensic DNA analyst, testified that she performed the lab work regarding the paternity of Susie's baby. She stated that she performed a DNA analysis of Susie's blood, Jones's blood, and fetal tissue from the baby. The results of the analysis showed that half of the baby's DNA matched Jones's DNA; therefore, Jones was not excluded as the baby's biological father. Nasir stated that she had also performed a prior DNA test on the drink can reportedly used by Jones, and the results were the same as those obtained using Jones's blood. Megan Shaffer, who performed a second, independent DNA analysis, testified that the results obtained from the DNA tests performed by Nasir on Jones's blood and the drink can were correct, and there was a 99.97% probability that Jones was not excluded as the father of Susie's baby. She testified that, in her scientific opinion, Jones was the father of the baby to a high degree of certainty.
¶ 8. At the close of the State's case, Jones moved for a directed verdict based on the State's failure to prove a prima facie case of sexual battery. Jones argued that the results of the DNA test should be excluded from evidence for two reasons: (1) the State failed to prove a chain of custody with regard to the drink can reportedly used by Jones and (2) the drink can was never introduced into evidence. The trial court denied the motion. Subsequently, *633 during a recess, Juror Faye Jackson was questioned in chambers regarding an incident involving the jury. She stated that, the day before, she was walking outside of the courthouse and heard a group of individuals "rejoicing" the fact that Willie Bell Dantzler was on the jury. According to Jackson, the individuals stated that with Dantzler on the jury they had a chance to "hang the jury." The State asked the trial court to replace Dantzler with an alternate juror of the same race, African American. Jones's attorney then advised the trial court that Jones would not testify and would not offer any witnesses. Jackson was then questioned again under oath. Jackson stated that she had no indication that Dantzler had been in communication with any of the individuals who were happy that she was on the jury. The trial court then dismissed Dantzler as a juror and replaced her with an African American alternate juror. Jones's counsel asked the trial judge if he could question Jackson, but the judge did not allow him to do so. Jones's counsel did not object to Dantzler's being removed from the jury.
¶ 9. After the defense rested, the jury received its instructions. Included were jury instructions on Mississippi Code Annotated subsection 97-3-95(1)(d), encompassing sexual battery of a child under the age of thirteen, and subsection 97-3-95(1)(c), encompassing sexual battery of a child over the age of fourteen but under sixteen. The jury found Jones guilty under subsection 97-3-95(1)(c) of sexual battery of a child at least fourteen but under sixteen. See Miss.Code Ann. § 97-3-95(1)(c) (Rev.2006).[4] The trial judge sentenced Jones to thirty years in prison with fifteen years to serve and fifteen years suspended. Jones filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, which was denied. Aggrieved, Jones now appeals.

DISCUSSION OF THE ISSUES

I. Whether the trial court erred in failing to grant Jones's motion for a directed verdict and motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, motion for a new trial.
¶ 10. During the trial, Jones moved for a directed verdict at the close of the State's case-in-chief, which the judge denied. After the jury returned a guilty verdict, Jones filed a motion for JNOV or, in the alternative, motion for a new trial, which was denied as well. We note that, while Jones specifically argues that the trial court erred in denying his motion for a directed verdict,[5] he does not argue that the court erred in denying his motion for a JNOV or, in the alternative, a new trial. However, because Jones's motion for JNOV or a new trial raised the issue addressed in this appeal and because Jones argues that the jury's verdict was contrary to the weight of the evidence, we will assume that Jones is challenging the trial *634 court's denial of his motion for a JNOV or a new trial.
¶ 11. A directed verdict and a motion for JNOV both challenge the sufficiency of the evidence presented to the jury. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Therefore, our standard of review is the same for both. This Court will consider the evidence in the light most favorable to the State, giving the State "the benefit of all favorable inferences that may reasonably be drawn from the evidence." Collier v. State, 711 So.2d 458, 461(¶ 11) (Miss.1998) (quoting Wetz v. State, 503 So.2d 803, 808 (Miss.1987)). The relevant question then becomes whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court will reverse and render only when the facts point so overwhelmingly in favor of the defendant that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty. Id. However, all credible evidence supporting the defendant's guilt will be accepted as true. McRee v. State, 732 So.2d 246, 249(¶ 9) (Miss.1999) (citing Wetz, 503 So.2d at 808).
¶ 12. Unlike a motion for a directed verdict or JNOV, a motion for a new trial challenges the weight of the evidence. Sheffield v. State, 749 So.2d 123, 127(¶ 16) (Miss.1999). This Court's standard of review of a trial court's denial of a motion for a new trial is abuse of discretion. Johnson v. State, 904 So.2d 162, 167(¶ 11) (Miss.2005) (quoting Esparaza v. State, 595 So.2d 418, 426 (Miss.1992)). A new trial will not be awarded unless "the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Id.
¶ 13. Jones argues there was no evidence in the record to support the jury's finding that Susie was fourteen years old at the time she became pregnant; rather, all the evidence indicates that Susie was thirteen years old. Thus, argues Jones, the State failed to prove the age of the victim, which is an essential element of the crime of sexual battery, and the jury's verdict was contrary to the weight of the evidence.
¶ 14. Jones was tried under Mississippi Code Annotated subsections 97-3-95(1)(c) and (d), which state as follows:
(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
....
(c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child....
Miss.Code Ann. § 97-3-95(1)(c) and (d) (Rev.2006). The indictment in this case alleged that Jones violated subsection 97-3-95(1)(d) or, in the alternative, subsection 97-3-95(1)(c). The jury instructions required the jury to find Jones guilty of subsection (1)(d) if they found that Jones sexually penetrated Susie when she was under the age of fourteen or guilty of subsection (1)(c) if they found that Susie was at least fourteen but under sixteen at the time of penetration.
¶ 15. "In a prosecution for sexual battery, the age of the victim is an essential element of the offense that must be alleged and proved." Washington v. State, 645 So.2d 915, 918 (Miss.1994). *635 "Due Process requires that the State prove each element of the offense beyond a reasonable doubt." Id. (citing Jackson, 443 U.S. at 324, 99 S.Ct. 2781). Jones was convicted under Mississippi Code Annotated subsection 97-3-95(1)(c), which means the jury found that he engaged in sexual penetration of Susie when she was at least fourteen but under sixteen. Jones argues that there was no evidence to support that Susie was fourteen when Jones had sex with her; therefore, he should be granted a new trial.[6]
¶ 16. While significant evidence was presented a trial indicating that Susie was thirteen when Jones impregnated her, we find that both the weight and sufficiency of the evidence were sufficient for the jury to convict Jones of sexual battery of Susie when she was fourteen years old.
¶ 17. According to Susie and portions of her medical records, the baby she conceived with Jones was born on December 27, 1999, at the approximate age of 22 weeks. Thus, the State argued at trial that the baby was conceived on or about July 30, 1999.[7] Susie turned fourteen years old on August 5, 1999. Because of the closeness in time of Susie's fourteenth birthday and the estimated date of conception, approximately a week to ten days, the jury could have found that Susie was fourteen at the time the baby was conceived. Moreover, although a majority of Susie's medical records indicate that the baby was born on December 27, 1999, and Susie herself testified that this was the date of birth, Jones pointed out to the jury the two documents in the records where the dates April 25, 1999, and April 25, 2000, had been written over other dates.[8] He later argued in closing that the dates and the purported 22-week age of the baby were altered in order to make them consistent with July 30, 1999, the date that was argued as the date of conception. This Court has stated that:
The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed. The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity. It is not for this Court to pass upon the credibility of witnesses and where evidence justifies the verdict it must be accepted as having been found worthy of belief.
Ford v. State, 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999) (citations omitted). In this case, the jury could have found that there was at least some uncertainty as to the timing of the baby's conception and chosen to err on the side of caution by convicting Jones of the lesser related crime.[9]
*636 ¶ 18. We also find it significant that, when the trial judge conducted the jury instruction conference, Jones did not object to the instruction advising the jury of their option to find him guilty of sexual battery of a female child at least the age of fourteen in violation of subsection 97-3-95(1)(c). If he felt that the State had not offered any evidence supporting Susie's being fourteen when she was impregnated, Jones should have moved to strike the jury instruction pertaining to Mississippi Code Annotated subsection 97-3-95(1)(c). In Washington, following the court's approval of a jury instruction that required the jury to find that the victim was under the age of fourteen, defense counsel objected on the grounds that the State never proved the age of the victim. Washington, 645 So.2d at 917. Jones made no such objection.
¶ 19. When viewed in the light most favorable to the State, the evidence presented at trial is sufficient to warrant the trial court's denial of Jones's motion for a directed verdict and JNOV. Regarding the motion for a new trial, allowing Jones's conviction to stand would certainly not sanction an unconscionable injustice. It is obvious that the crime of sexual battery was committed against this minor; and the DNA evidence, if believed as it was by the jury, indicates that Jones was the perpetrator. While we, as jurors, might have found that the evidence supported finding Jones guilty of the greater related offense, that of sexual battery of minor under the age of fourteen, we cannot say that a miscarriage of justice resulted from the jury's finding him guilty of the lesser related offense. Thus, we find that both the weight and sufficiency of the evidence were adequate to convict Jones under Mississippi Code Annotated subsection 97-3-95(1)(c), and the trial court did not err in denying Jones's motions for directed verdict, JNOV, or a new trial.

II. Whether the trial court erred in dismissing Juror Dantzler and replacing her with an alternate juror.
¶ 20. Jones contends that the trial judge erred in dismissing Dantzler from the jury and replacing her with an alternative juror because there was no evidence indicating that she was incapable of being fair and impartial. He argues that he was prejudiced by the dismissal because Dantzler was highly educated with a graduate degree and her educational background was needed due to the complicated DNA evidence presented in this case. Jones also argues that the trial court should have questioned Dantzler regarding the allegations made by Jackson.
¶ 21. Jones's counsel, however, did not make a contemporaneous objection following the trial court's removal of Dantzler. Jones first raised this issue in his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was filed post-verdict. In neither case did the trial judge have an opportunity to take any remedial action, if he had been inclined to do so.
¶ 22. "It is axiomatic that a litigant is required to make a timely objection." Smith v. State, 797 So.2d 854, 856(¶ 7) (Miss.2001) (citing Barnett v. State, 725 So.2d 797, 801(¶ 23) (Miss.1998)). The failure to make a contemporaneous objection serves as a waiver of any error. Id. Thus, Jones's assignment of error is procedurally barred for failure to make a contemporaneous objection.
*637 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF SEXUAL BATTERY OF A MINOR AND SENTENCE OF THIRTY YEARS, FIFTEEN YEARS TO SERVE AND FIFTEEN YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] In order to protect the identity of the minor victim, we have substituted a fictitious name for her. The victim is referred to as Susie.
[2] In order to protect her identity, the friend is referred to as Paula.
[3] The documents included in the record are photocopies and are of poor quality; thus, we cannot determine the spaces to which the dates correspond.
[4] Sections 97-3-95 was last revised on July 1, 1998. Therefore, the current codification of the statute is the same as the codification in effect at time this crime was committed. Accordingly, for ease of reference, we will cite to the current codification of the statute.
[5] In moving for a directed verdict, Jones's attorney did not specifically argue that the State failed to provide any evidence that Susie was fourteen at the time she became pregnant; rather, he stated in conclusory fashion that the State had not proven a prima facie case of sexual battery and, specifically, that the drink can reportedly used by Jones was not introduced into evidence nor had the State proven a chain of custody with regard to the DNA test performed on the drink can.
[6] He relies on Washington, also a sexual battery case, in which the Mississippi Supreme Court found that the defendant's right to a jury trial was violated when the State failed to offer any proof of the victim's age. 645 So.2d at 918-19. The court found that the fact that the jury could have inferred the victim's age by a visual inspection of her was not sufficient to sustain the verdict. Id. at 919.
[7] When referring to July 30, 1999, the State repeatedly preceded the date with "on or about." The indictment also says "on or about July 30, 1999."
[8] Again, we cannot determine from the copies in the records what space the dates are written in, but the testimony at trial indicated that they were written in the space marked "EDD" or "estimated date of delivery." We acknowledge that the estimated date of delivery could represent the approximate date Susie would have given birth had the child not been born prematurely.
[9] Subsection 97-3-95(1)(c), under which Jones was convicted, carries with it a sentence of not more than thirty years, while subsection 97-3-95(1)(d), which pertains to sexual battery of child under the age of fourteen, carries with it a potential sentence of life imprisonment. Therefore, Jones was subject to a less severe sentence than he would have been had the jury found that Susie was thirteen at the time he had sex with her.