# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00809-COA

CLINTON WINTERS, JR. A/K/A CLINTON S. WINTERS      APPELLANT

v.

STATE OF MISSISSIPPI      APPELLEE

DATE OF JUDGMENT: 06/29/2020
TRIAL JUDGE: HON. SMITH MURPHEY
COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES CLINTON WINTERS (PRO SE)
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY: JOHN W. CHAMPION
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 12/07/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

## BEFORE CARLTON, P.J., LAWRENCE AND EMFINGER, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On June 2, 2020, a Panola County jury convicted Clinton Winters of possession of more than ten but less than thirty grams of methamphetamine. The circuit court sentenced Winters as a violent habitual offender to life in the custody of the Mississippi Department of Corrections without eligibility for parole.[1] Winters filed a motion for judgment

---

[1] Winters was originally indicted as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015). Five months before trial, the State filed a motion to amend the indictment to charge Winters as a habitual offender pursuant to Mississippi

notwithstanding the verdict (JNOV), or alternatively, a new trial. The circuit court denied Winters' post-trial motion, and he appealed.[2]

¶2. On appeal, Winters raises four claims: (1) the circuit court erred in allowing information related to his grand-larceny charge and prior felony convictions into evidence under Mississippi Rule of Evidence 404(b); (2) the circuit court erred in denying his request for a circumstantial-evidence instruction; (3) there was insufficient evidence to support his conviction; and (4) the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm Winters' conviction and sentence.

**FACTS**

¶3. Winters and Kimberly King met in early January 2019. They started out as friends but became involved in a romantic relationship around one month later. On February 3, 2019, Winters sent King several messages on Facebook Instant Messenger. Winters asked King to meet him at her place in Pope, Mississippi, so they could "finally be alone." Winters also said, "I got a[n] oz[.] to share with you. Before I go back to prison."[3] Winters and King met at her house later that day, and Winters brought methamphetamine for them to smoke.

_____

Code Annotated section 99-19-83 (Rev. 2015). During a hearing on the motion, the State introduced Winters' prior felony convictions into evidence. After the hearing, the circuit court entered an order granting the State's motion to amend the indictment.

[2] Winters filed a pro se supplemental brief that does not comply with Mississippi Rule of Appellate Procedure 28. Winters also failed to cite any legal authority for his arguments. Consequently, Winters' arguments are procedurally barred on appeal. *King v. State*, 857 So. 2d 702, 725 (¶70) (Miss. 2003).

[3] Winters was on probation for another felony conviction at the time. There was also a warrant out for his arrest in relation to a stolen trailer, which will be discussed in more detail later in the opinion.

Winters and King continued to smoke together for several days and also traveled together to Tunica, Mississippi, to go to some casinos.

¶4. On the morning of February 8, 2019, Winters and King left Tunica and headed toward Batesville, Mississippi. Unbeknownst to King, Winters scheduled a meeting with his federal probation officer in Batesville. King drove Winters' truck to Batesville, and they stopped at a gas station, where two local officers were waiting to arrest him for allegedly stealing a trailer.[4] Winters asked King to hold the leftover methamphetamine because she would not be searched. King placed the leftover methamphetamine in her bra. The two then exited the truck as the officers approached them and began to question them separately. The two officers were Investigator Justin Maples of the Panola County Sheriff's Department and Officer Beau Dickson of the Batesville Police Department. Both officers noticed the smell of marijuana on King and Winters. Investigator Maples arrested Winters on the grand-larceny charge involving the stolen trailer. No drugs were found on Winters or in his vehicle. As Officer Dickson approached King to conduct a search, she handed the officers two marijuana cigarettes from her pocket. King then lifted her shirt to get rid of the methamphetamine hidden in her bra. Officer Dickson also seized a glass pipe from King's left pocket and a flashlight containing methamphetamine from her right pocket. At that point, King was arrested. Both Winters and King were taken to the police station for questioning.

---

[4] The probation officer did not testify at trial.

¶5. King signed a *Miranda*[5] waiver and provided a written statement to the police, stating that she had no knowledge of Winters' involvement with a stolen trailer. She also stated that when she was searched, she "voluntarily" discarded the methamphetamine from her bra and that she was not aware that the flashlight in her pocket contained methamphetamine. King stated that she took the flashlight from Winters' truck console because she had no electricity at her house.

¶6. Winters also signed a *Miranda* waiver and provided audio and written statements. Investigator Maples and Officer J.P. Wallace of the Batesville Police Department were present for both statements. In his audio statement, Winters said that a man named Marcus Price asked him to move a trailer from Batesville to Webb, Mississippi, and that Price paid him "$1,200, a quarter sack of weed, and some ice"[6] for the job. Winters' written statement was consistent with his audio statement in regard to the form of "payment." In his written statement, he added that the methamphetamine he received from Price as payment for transferring the trailer was the same methamphetamine found on King's person.

¶7. In October 2019, Winters was indicted for possession of between ten and thirty grams of methamphetamine. His case proceeded to trial on June 1, 2020. King was the State's key witness. She first testified about Winters' Facebook messages, in which he invited her to come do drugs with him. Those Facebook messages were introduced into evidence. The remainder of King's testimony mirrored her written statement, which was introduced into

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] "Ice" is another term for crystal methamphetamine.

4

evidence by the State on redirect examination. She maintained that the methamphetamine did not belong to her and that Winters asked her to "hold onto it" while they stopped in Batesville.

¶8. Investigator Maples and Officer Dickson testified to the details surrounding the searches and arrests of Winters and King. Investigator Maples and Officer Wallace authenticated Winters' audio and written statements, which were both introduced into evidence. A forensic scientist from the Mississippi Crime Laboratory testified that the substance King discarded from her bra was 11.756 grams of methamphetamine and the substance retrieved from the flashlight was 1.819 grams of methamphetamine.

¶9. Winters was the only witness to testify on his behalf. He denied writing the Facebook messages previously admitted into evidence and denied having any connection to the methamphetamine found on King's person. He also denied ever giving an audio statement or a written statement.

¶10. The jury ultimately found Winters guilty of possession of a controlled substance pursuant to Mississippi Code Annotated section 41-29-139(c)(1)(D) (Rev. 2015). Winters' post-trial motion was denied, and he appealed.

## ANALYSIS

### 1. Rule 404(b)

¶11. Winters first argues that the circuit court erred in allowing information related to his grand-larceny indictment and prior felony convictions into evidence under Rule 404(b).

Winters filed numerous motions in limine.[7] In the first motion in limine, he sought to "exclude [his] other charges, indictments regarding his grand larceny indictment from being presented by the State or any witness at the trial of this case." In the second motion in limine, he sought to "prevent the eliciting of or the introducing of testimony or the admission into evidence of [his] past felony convictions . . . ."

¶12. At the pretrial hearing, Winters first argued that any evidence of his prior felony convictions was more prejudicial than probative and in direct violation of Rule 404(b). The State argued that it could not tell a complete story of the events without mentioning that Winters was scheduled to meet with his probation officer at the time the controlled substance was found. The State maintained that it planned to be "very cautious . . . to minimize the impact on the jury." With that in mind, the State informed the court that it did not intend to elicit any testimony as to Winters' prior felony convictions. Ultimately, the court denied Winters' motion based on the understanding that the State would not delve into the specifics of those prior felony convictions.[8] The court agreed with the State that "there's no way to explain why these two people are in the same place at the same time, being the defendant and the probation officer, without there being information before the jury that there was a probation officer."

¶13. Next, Winters requested that the court "exclude or suppress any references to the fact

---

[7] Winters also filed a motion in limine to suppress all jail calls. However, that motion is not an issue on appeal.

[8] The court ruled from the bench and never entered a formal written order as to this issue.

6

that Mr. Winters is being accused of grand larceny in another indictment." The State informed the court that it had "no intention of asking in [its] case in chief whether or not [he] had been indicted for grand larceny . . . ." The State did, however, plan to reference the trailer (the source of the grand-larceny indictment) because it could not tell a complete story of the events without referencing the trailer, as it was the alleged source of payment for the methamphetamine found on King's person. The court ultimately found that "at this point in time the testimony, if it is laid out as the State intends it to be, I would have to deny the defendant's motion to exclude evidence pertaining to the exchange of that trailer and the identity and knowledge of the methamphetamine."

¶14. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Gore v. State*, 37 So. 3d 1178, 1183 (¶13) (Miss. 2010) (quoting *Price v. State*, 898 So. 2d 641, 653 (¶29) (Miss. 2005)). Rule 404(b) provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

MRE 404(b).

¶15. Before admitting evidence of prior bad acts, a circuit court must filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative

value outweighs its prejudicial effect to the defendant. *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008). If a circuit court finds the probative value outweighs the prejudicial effect, the evidence will be admitted, provided the jury is given a limiting instruction regarding the evidence in question. *Id*.

¶16. The Mississippi Supreme Court has stated that "where the bad conduct is so closely intertwined with the crime charged and has a direct relationship to the [crime charged], as it does here, there is no error in allowing the jury to hear it." *Bell v. State*, 725 So. 2d 836, 851 (¶36) (Miss. 1998). Here, the circuit court applied that reasoning and agreed with the State's contention that it could not tell the entire story without mentioning the probation officer or the trailer. After review, we find no abuse of discretion in the circuit court's denial of Winters' motions. To hold otherwise would have forced the State to only tell pieces of the story and created confusion among the jurors. "When dealing with closely related acts, the State 'has a legitimate interest in telling a rational and coherent story of what happened.'" *Newell v. State*, 175 So. 3d 1260, 1276 (¶34) (Miss. 2015) (quoting *Welde v. State*, 3 So. 3d 113, 117 (¶14) (Miss. 2009)).

¶17. For the first time on appeal, Winters claims that the introduction of King's written statement, particularly the reference to a stolen trailer, violated the court's ruling. At trial, Winters attempted to attack King's credibility on cross-examination. As a result, the State introduced her written statement to the police on redirect examination in order to rehabilitate her. The beginning of King's written statement read, "I was not in town when [Winters] stole the trailer." The remainder of the statement was consistent with her testimony at

trial—that Winters gave her the methamphetamine right before they stopped at the gas station in Batesville. Before the statement was marked as an exhibit, the following exchange occurred:

> **THE STATE:** Your Honor, at this time, the State would ask that this be entered into evidence as an exhibit to this witness'[s] testimony.
>
> **BY THE COURT:** Any objection?
>
> **THE DEFENSE:** No objection, Your Honor.

¶18. As shown above, Winters made no objection at trial when the State introduced King's statement. It is well established that "[f]ailure to object with specificity in the trial court results in a waiver" of the issue on appeal. *Pustay v. State*, 221 So. 3d 320, 346 (¶73) (Miss. Ct. App. 2016) (citing *Stevens v. State*, 458 So. 2d 726, 730 (Miss. 1984)). Further, it must be acknowledged that the State did not introduce any evidence that Winters had been **indicted** for stealing a trailer.[9] That was the information Winters sought to prohibit in his motion in limine, and that was the information the court ruled on. Winters cannot expand his written pretrial motion in limine for the first time on appeal, and argue, as error, issues that he did not argue before the trial court.[10] *See, e.g.*, *Warren v. State*, 456 So. 2d 735, 738

---

[9] In fact, Winters' testimony revealed that he was arrested for grand larceny, stating that he "was remanded in handcuffs because the initial pullover was for assuming that [he] stole or committed the crime of grand larceny." He also testified that he was under federal and state probation at the time of the offense. The court provided the jury with two curative instructions concerning Winters' testimony about his state probation and federal probation and the "stealing the trailer" testimony. Neither party objected to the proposed instructions when asked by the court.

[10] It is worth noting that Winters' failure to object at trial would not have been fatal if he had specifically raised this issue in his motion in limine, and the court had denied his

(Miss. 1984); *Crenshaw v. State*, 520 So. 2d 131, 134-35 (Miss. 1988) (stating that "[a] trial judge cannot be put in error on a matter [that] was not presented to him for decision"). Thus, we find that Winters' argument on this issue is without merit.

### 2. Circumstantial-Evidence Instruction

¶19. Winters also argues that the circuit court erred in denying his requested circumstantial-evidence jury instruction because there was no direct evidence that he was in possession of a controlled substance. This Court reviews a trial court's decision to give or refuse jury instructions for abuse of discretion. *Valentine v. State*, 322 So. 3d 417, 423 (¶27) (Miss. 2021). Additionally, the given jury instructions "must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010).

¶20. Contrary to Winters' assertion, the State did present direct evidence in the form of (1) Winters' admission in his written statement that the methamphetamine he received as payment for moving the trailer was the same methamphetamine found on King's person; and (2) King's eyewitness testimony. King specifically testified that Winters supplied the

---

motion. In *Kettle v. State*, 641 So. 2d 746, 748 (Miss. 1994), the Mississippi Supreme Court held that a defendant is not required to object to certain evidence at trial if the defendant previously filed a motion in limine to exclude that evidence. *See also Goff v. State*, 14 So. 3d 625, 640 (¶45) (Miss. 2009) (stating that "[w]hile Goff did not object to the admission of any evidence taken from his vehicle at trial, we find that the pretrial proceedings were sufficient to preserve the issue for appeal"). The supreme court in *Kettle* stated that "[w]hile it would have been preferable, and by far the safer practice for [the defendant] to have renewed his objection, we find the error in this case was sufficiently preserved by language of the motion in limine . . . ." *Kettle*, 641 So. 2d at 748. Here, Winters' motion in limine specifically sought to exclude evidence of the grand-larceny "indictment," not the trailer itself.

methamphetamine and that she received physical, actual possession of the methamphetamine from Winters. More specifically, she testified that Winters asked her to "hold onto it because [she] wasn't going to be checked."

¶21. For the sake of argument, even if there was only circumstantial evidence in this case, the Mississippi Supreme Court has recently overruled the need for a special jury instruction for circumstantial evidence. *Nevels v. State*, 325 So. 3d 627, 630-31, 634 (¶¶11-12, 20) (Miss. 2021). The supreme court specifically held that the jury instruction for circumstantial evidence requiring a heightened burden of proof—"to the exclusion of every reasonable hypotheses consistent with innocence"—is incorrect. *Id*. The supreme court further stated that "it is finally time to lay aside the false notion that, when it comes to circumstantial evidence cases, there is somehow a higher burden of proof than beyond a reasonable doubt." *Id*. at 629 (¶2). Instead, there is only one burden of proof regardless of whether evidence is direct or circumstantial: "Jurors should not be concerned about whether evidence is 'direct evidence' or 'circumstantial evidence.' They should consider and weigh all of the evidence presented. And 'if the jury is convinced beyond a reasonable doubt, we can require no more.'" *Id.* at 634 (¶20) (quoting *Holland v. United States*, 348 U.S. 121, 141 (1954)).

¶22. Here, the jury was instructed on the elements of possession of a controlled substance and the State's burden to prove those elements beyond a reasonable doubt. Reading the jury instructions as whole, we find the instructions fairly announced the applicable law and created no injustice for Winters. Thus, we find no abuse of discretion in the circuit court's refusal of Winters' proposed circumstantial-evidence instruction.

11

### 3. Sufficiency of Evidence

¶23. Winters contends that the circuit court erred in denying his motion for JNOV because there was insufficient evidence presented to support his conviction of possession of a controlled substance under section 41-29-139(c)(1)(D). Sufficiency of the evidence claims are reviewed de novo. *Sanford v. State*, 247 So. 3d 1242, 1244 (¶10) (Miss. 2018). When reviewing a challenge to the sufficiency of the evidence, "[t]he relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (internal quotation marks omitted) (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). The evidence is viewed in the light most favorable to the State, and the State is given all favorable inferences that can be reasonably drawn from the evidence presented at trial. *Henley v. State*, 136 So. 3d 413, 416 (¶8) (Miss. 2014). "This Court will reverse and render only when the facts point so overwhelmingly in favor of the defendant that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty." *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008).

¶24. It is well-settled law that "[t]o support a conviction for possession of a controlled substance, 'there must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.'" *Glidden v. State*, 74 So. 3d 342, 345 (¶12) (Miss. 2011) (quoting *Wall v. State*, 718 So. 2d 1107, 1111 (¶7) (Miss. 1998)). Section 41-29-139(c) specifically provides that "[i]t is unlawful for any person knowingly or intentionally to possess any controlled substance unless the substance was obtained directly from, or pursuant

12

to, a valid prescription or order of a practitioner . . . ." That possession can either be "actual or constructive." *Johnson v. State*, 81 So. 3d 1020, 1023 (¶7) (Miss. 2011).

¶25. "To establish constructive possession, the drug simply has to be found near the defendant 'in a place over which the defendant exercises dominion or control.'" *Fontenot v. State*, 110 So. 3d 800, 804 (¶9) (Miss. Ct. App. 2012) (quoting *Glidden*, 74 So. 3d at 348 (¶20)). The defendant's location in connection with the drugs "is not a determinative factor in establishing constructive possession." *Id*. (citing *Knight v. State*, 72 So. 3d 1056, 1063 (¶26) (Miss. 2011)). Notably, "[t]he elements of constructive possession may be proven by circumstantial evidence." *Bates v. State*, 952 So. 2d 320, 325 (¶21) (Miss. Ct. App. 2007) (citing *Martin v. State*, 413 So. 2d 730, 732 (Miss. 1982)).

¶26. In this case, King testified that Winters supplied her methamphetamine in the days leading up to the arrest. She also testified that before they stopped at the gas station in Batesville, he asked her to "hold onto [the methamphetamine] because [she] wasn't going to be checked . . . ." Officer Dickson testified that he saw King discard what he believed to be methamphetamine from her bra. He also searched King and retrieved what he believed to be methamphetamine from a flashlight in her pocket. A forensic scientist from the Mississippi Crime Laboratory confirmed at trial that both substances were methamphetamine and combined it weighed more than thirteen grams. Investigator Maples and Officer Wallace testified that they were both present when Winters gave his audio and written statements. In his audio statement, Winters stated that he was paid "$1,200, a quarter sack of weed, and some ice" to move a trailer. In his written statement, he stated that he was paid "$1,200, a

quarter bag of weed, and some meth" to move the trailer and that the methamphetamine was "the same meth that Kimberly King had on her."

¶27. Winters was the only defense witness. He denied providing either statement to police. He also denied sending King the Facebook messages that were admitted into evidence. Finally, Winters testified that he did not use methamphetamine and had no connection to or knowledge of the drugs found on King's person.

¶28. "The jury is the sole judge of the credibility of witnesses, and its decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." *Jones v. State*, 252 So. 3d 574, 587 (¶54) (Miss. 2018). Further, "the jury . . . is free to accept or reject all or some of the testimony given by each witness." *Young v. State*, 236 So. 3d 49, 57 (¶35) (Miss. 2017). Here, the jury was presented with conflicting testimony—the State's witnesses' testimony and Winters' testimony. The jury determined the weight and worth of the conflicting testimony and found that Winters was guilty of possession of a controlled substance. Viewing the evidence in the light most favorable to the State, this Court finds that sufficient evidence was presented for a reasonable trier of fact to find that the State proved the essential elements of the crime beyond a reasonable doubt.

### 4. Weight of the Evidence

¶29. Finally, Winters asserts that the verdict was against the overwhelming weight of the evidence and therefore the court erred in denying his motion for a new trial. "A motion for new trial falls within a lower standard of review than does that of a [JNOV] or a directed

14

verdict. A motion for a new trial simply challenges the weight of the evidence." *Lacey v. State*, 310 So. 3d 1206, 1215 (¶22) (Miss. Ct. App. 2020) (quoting *Daniels v. State*, 107 So. 3d 961, 963 (¶12) (Miss. 2013)). When reviewing a challenge to the weight of the evidence, this Court must determine whether or not the trial court abused its discretion. *Daniels*, 107 So. 3d at 963 (¶12).

¶30. Our role as an appellate court is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). When determining if a trial court judge abused his or her discretion in denying a motion for new trial, this Court will not act as the "thirteenth juror." *Id*. at 292 (¶20). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id*. at 289 (¶1).

¶31. The jury here had ample evidence to consider. As previously stated, the State presented eyewitness testimony and an admission by the defendant in the form of his written statement. Winters denied any connection to the methamphetamine found on King's person and denied providing any audio or written statement. The jury judged each witness's credibility and ultimately determined that Winters was guilty of possession of a controlled substance. Accepting the evidence supporting the jury's verdict as true in this case, we do not find the verdict to be so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable injustice.

## CONCLUSION

¶32. This Court finds no error in the circuit court's denial of Winters' motions in limine. Additionally, the direct evidence presented in this case coupled with the supreme court's recent decision in *Nevels* renders Winters' circumstantial-evidence-instruction argument without merit. Further, we find there was sufficient evidence to support to the jury's verdict, and the verdict is not against the overwhelming weight of the evidence. Accordingly, we affirm Winters' conviction and sentence.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**