# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01372-COA

**JOHN NATHANIEL PIERRE A/K/A JOHN PIERRE A/K/A JOHN N. PIERRE**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/22/2024 |
| TRIAL JUDGE: | HON. RANDI PERESICH MUELLER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/24/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A Harrison County grand jury indicted John Nathaniel Pierre on fourteen counts of sexual battery (Counts I through XIV) and one count of attempted sexual battery (Count XV). Count I was later "passed to the files" at the State's request. After a two-day trial, a Harrison County Circuit Court jury found Pierre guilty of all remaining counts, and the trial court sentenced Pierre to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) for each conviction of Counts II and VII-XIV and to serve thirty years for each conviction of Counts III-VI and XV. The court ordered the sentences for Counts

II through VI to run concurrently, and Counts VII through XV to run concurrently. The court further ordered the concurrent sentences for Counts II through VI to run consecutively to the concurrent sentences for Counts VII through XV, for a total of two life sentences in MDOC's custody. Pierre filed a post-trial motion, which the trial court denied. On appeal, we find no error and affirm.

## Facts and Procedural History

¶2. Pierre, his wife Mila, and Mila's daughters Nancy and May, moved from Louisiana to Biloxi, Mississippi, in July 2016.[1] They lived as a family in Biloxi until July 2021, when Mila and the girls moved out. In August 2022, Nancy told her mother that she and May had suffered years of sexual abuse by Pierre, their stepfather. Mila and the two girls reported the abuse to the Biloxi Police Department, which issued an arrest warrant for Pierre. When an officer saw Pierre's vehicle at a stop sign, he attempted to initiate a traffic stop, but Pierre sped away. He continued to flee law enforcement, driving at a high rate of speed. Eventually, Pierre crashed his car and fled on foot, and he was arrested.

¶3. On July 17, 2023, Pierre was indicted on fourteen counts of sexual battery (Counts I through XIV) under Mississippi Code Annotated section 97-3-95 (Rev. 2020) and one count of attempted sexual battery (Count XV) under section 97-1-7 (Rev. 2020). A jury trial was held on October 15-16, 2024.

¶4. Nancy, now twenty years old, testified that she was approximately nine years old when they began living with Pierre. Nancy said that in August 2022, she became "fed up with it"

---

[1] We use pseudonyms for the child victims and mother as stated in the appellant's brief.

and confronted Pierre about his sexually abusing her, asking, "Why did this all come about or why was it happening, what caused it to?" Nancy recorded the conversation, and the audio was played for the jury. Nancy testified that she told her mother later that day what had happened. Pierre was present, but he quickly left in his car when Nancy told Mila. Pierre then sent Nancy text messages, which were admitted into evidence. In excerpts from the messages, Pierre stated:

> I put everything on the line out of love for y'all hoping and praying that you would see it and understand it[.]
>
> But now I see you can't understand it because you feel like I raped you . . . .
>
> I made poor decisions in the situation, but I never forced no one to do anything.
>
> . . . .
>
> You make it seem like I actually forced you and I didn't many times[;] you did what you did cause you wanted to regardless of if it was to help me out or anybody else out so I will never admit to something that is not true and you not going to say that I forced you every time.

When counsel asked Nancy "what is the situation" referenced in the text messages, she replied, "I'm talking about having sex . . . us being in a room and [Pierre] taking his d*** out and put[ting] it in my vagina."

¶5.     Nancy said that the sexual abuse "started with oral" when Pierre made her "suck his d***." Nancy testified that in August 2016, Pierre "put his d*** in my vagina." Nancy noted another encounter in August 2018 involving her "on [her] knees and [Pierre] was behind me and he was putting his d*** in my vagina." This situation occurred again in September 2018 and December 2021. Nancy testified that she "cried every time it

3

happened."

¶6.    Nancy said that the encounters typically started with Pierre threatening to take Nancy's phone away or to tell her mother. Occasionally, Pierre followed through with those threats by taking her phone away as punishment if she did not participate, and Nancy was afraid that she would get in trouble because of Pierre's actions. In 2019, Nancy "caught" Pierre and her sister May in the master bedroom, and Pierre was "behind her and her pants was down." She noted Pierre was "like nudging his penis on [May]."

¶7.    Seventeen-year-old May testified that she was "around five, six years old" when Pierre first rubbed his penis against her while they were in a swimming pool. May claimed that later that day, "he stuck his hand in my pants and rubbed against my vagina." She said Pierre's inappropriate touching that day "felt uncomfortable and wrong and terrible in every way." May claimed that she told her mother what happened, and Pierre said it would not happen again; so May "thought it was done and over with."[2]

¶8.    May further testified that one night in Louisiana, she walked into her grandmother's bedroom and saw Pierre with "his penis in [Nancy's] mouth." May said that Nancy came out of the room "crying." On another day, Pierre would not let May go outside to play with friends until she let "him rub his penis against [her] vagina." She said, "It was really uncomfortable and I didn't think it was right at any moment." May noted that she felt pressure "all right here (indicating) under my legs, in between my legs."

¶9.    After they moved to Biloxi, May witnessed Pierre "being over my sister" in the guest

---

[2] Mila, however, denied that May had previously told her about any abuse.

4

bedroom, "but it was really dark." She said Nancy later "came in there crying[,] and she was telling me, don't tell on him."[3] May testified that a few days later, Pierre approached her and offered to give her money or snacks if she would "bend over and let him press his penis against my vagina." The encounters would typically begin by Pierre's texting her or telling her to come here, "or he would say, give me your phone and he would say that he found something in there and he would try to manipulate the situation." May "would always say no," which resulted in an argument, "or he would like take my phone, my computer away." May could recall the dates of the encounters because there were text messages on her phone. When the prosecutor asked how often she "would have to get on [her] knees and [Pierre] would rub his penis against [her] vagina," May stated that it "happened very often[,] . . . regularly." She testified that the encounters typically ended with Pierre's ejaculating on her body; so she would take a shower to wash it off. The last incident of sexual abuse May recalled was around July 2022, when Pierre "put his penis in my mouth while [she] . . . was sleeping." Upon further questioning, she clarified that his penis was in her mouth, "[l]ike just a little bit, but it would be inside, like I would know."

¶10.    Over the defense's objection, the State introduced text messages between May and Pierre from July 11, 2022, when she was fifteen years old; May testified that the abuse had ended before the text messages, which were about Pierre's wanting to rub his penis against her vagina one more time.

¶11.    The victims' mother, Mila, testified that she married Pierre in January 2016. She said

---

[3] After a hearsay objection was made, the trial judge ruled that the testimony would be admissible as "an excited utterance."

5

that when Nancy disclosed the abuse to her, she "screamed, hollering," and ran outside to confront Pierre, but he drove away. She called Pierre and asked if he had sex with Nancy; he said "yes" and wanted to meet with her to discuss it. She admitted on cross-examination that neither child had accused Pierre of any abuse prior to that day.

¶12. Mila's cousin, Brandon Dillard, testified that he was staying with Mila on August 8, 2022; so he was present when she learned of the allegations of abuse. He testified that after Pierre left that day, Pierre called him and said, "It's not what you think it is." Dillard lived with the family for "about a year during Covid" and never witnessed any inappropriate sexual behavior between Pierre and the victims.

¶13. Officer Neal Allen with the Biloxi Police Department testified that he tried to serve an arrest warrant on Pierre at his home, but Pierre was not there. Officer Allen parked at a nearby store and saw Pierre's vehicle stopped at a stop sign nearby—not moving—despite there being no other traffic in the area. Officer Allen ran the tags, confirmed the driver was Pierre, and then initiated a traffic stop. But during the stop, Pierre put his car "back in gear and took off." Pierre reached speeds of over 100 miles per hour, and Officer Allen eventually lost sight of him.

¶14. Officer Zachary Shore with the Harrison County Sheriff's Department testified that he located Pierre's vehicle and tried to stop him, but Pierre continued to evade law enforcement. Officer Shore said Pierre drove westbound on Interstate 10, reaching "speeds [in] excess of 120 miles per hour and show[ing] no due regard to anybody on the roadway at that time." Dispatch was then notified that Pierre had crashed his car. Officer Shore

responded to the scene of the crash, but Pierre was not at the scene; so the officer tried to use his K-9 partner to track Pierre. Due to the hot temperatures, the dog began to overheat before he could find Pierre. Dispatch was later alerted that "a black male wearing no shirt" was seen "walking on the offramp," and Officer Shore was able to locate and take Pierre into custody.

¶15. The State rested, and the defense moved for a directed verdict. Specifically, with regard to the charges of sexual battery of May (Counts VII-XV), the defense argued: "Judge, I just believe that they have not proven that there's been any penetration, even slight. All of her testimony has been rubbing of penis onto the vagina, and we believe that there's been no evidence of even slight penetration." The State responded by addressing each element, particularly noting May's testimony "about pressure, about pain, about pressure in her stomach." After a recess, the trial court denied the motion for a directed verdict. Citing this Court's holding in *Austin v. State*, 282 So. 3d 545 (Miss. Ct. App. 2019), the trial court reasoned that "when you combine [May's] testimony with the other evidence in the case, and also with her sister's testimony about what she observed and the defendant being behind [May] and pushing his penis up against her from behind, as well I think is enough to make it a jury issue."

¶16. The jury found Pierre guilty of all counts. On October 22, 2024, the trial court sentenced Pierre to the following terms:

> Life in Count II, Thirty (30) Years to serve in Counts III-VI, Life in Count VII, Life in Counts VIII-XIV, and Thirty (30) Years to serve in Count XV. Counts II-VI shall run concurrently for a total of Life and Counts VII-XV shall run concurrently for a total of Life, with both to run consecutive to each other for

7

a total of Two (2) Life sentences incarcerated in an institution under the control and supervision of the [MDOC].

Pierre filed a motion for a new trial, which the trial court denied.

**Discussion**

**I.      Whether the trial court erred in giving Jury Instruction S-21.**

¶17.    Pierre claims that the trial court erred in giving Jury Instruction S-21, which stated: "The Court instructs the Jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact." He argues the instruction "improperly commented on the weight of the evidence, was argumentative, couched in prosecutorial terms and impermissibly drawn in the borrowed language/reasoning of appellate opinions[] in evaluating the sufficiency of the evidence on appeal." Pierre further contends, "The instruction improperly singled out and commented on the weight of the victim's testimonies, and it prejudiced the defense by depriving Pierre of a fair and objective consideration of the credibility or weight of the evidence by the jury."

¶18.    When this Court considers a challenge to jury instructions on appeal, we do not view the "jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed." *Barnes v. State*, 348 So. 3d 974, 982 (¶12) (Miss. Ct. App. 2022). If the jury instructions, when read as a whole, "fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. at 982-83 (¶12).

¶19.    The State argues that Pierre has waived this issue because he failed to make a *specific* objection to this instruction. The Mississippi Supreme Court has held, "An objection must be made with specificity, and failure to articulate the grounds for [the] objection constitutes

8

a waiver of the alleged error." *Ross v. State*, 954 So. 2d 968, 987 (¶27) (Miss. 2007). At trial, defense counsel objected to the instruction, simply stating: "Judge, I know it's routinely given. I don't like it. I just want to object on the record." The trial judge overruled the objection and gave the instruction, finding that "it is consistent with the law and it certainly has been given in every other similar case that I've had." We agree with the State that this general objection waives this issue for appeal. *See Irby v. State*, 893 So. 2d 1042, 1047 (¶18) (Miss. 2004) (holding that defense counsel's "vague[]" objection that the instruction was "highly prejudicial . . . lack[ed] the specificity our precedent requires to preserve the issue for appeal").

¶20. Regardless, as Pierre admits in his brief, "the appellate courts of this State have previously affirmed the grant of instructions identical or very similar to instruction S-21 in this case." *See Pitts v. State*, 291 So. 3d 751, 757-58 (¶¶30, 38) (Miss. 2020) (finding an identically worded jury instruction "constitutes an accurate statement of the law . . . and did not improperly comment on the evidence"); *see also Barnes*, 348 So. 3d at 983 (¶¶13-14); *Bliss v. State*, 326 So. 3d 1000, 1005 (¶¶17, 21) (Miss. Ct. App. 2021); *Parks v. State*, 228 So. 3d 853, 871 (¶¶70-72) (Miss. Ct. App. 2017). Accordingly, we find Pierre's argument lacks merit.

## II. Whether the evidence was sufficient to support the convictions of Counts VII through XIV.

¶21. Pierre renews his argument from trial that there was insufficient evidence to support the convictions of Counts VII through XIV for sexual battery, which contained allegations that Pierre penetrated May's vagina with his penis. Pierre asserts that May only testified that

he "rubbed his penis against [her] vagina." He therefore requests that these convictions be directly remanded "for resentencing on the lesser-included offense of fondling."[4]

¶22.	In support of this issue, Pierre relies on *Ringer v. State*, 203 So. 3d 794, 797 (¶10) (Miss. Ct. App. 2016), a case in which we held that there was insufficient evidence to show that the defendant had penetrated the victim's anus. However, *Ringer* clearly distinguished anal penetration from penetration of the vulva. *Id*. at (¶9). This Court noted that "[t]he rule that penetration of the vulva amounts to sexual penetration is well established in the law" and "is consistent with the statutory definition of sexual penetration[,] . . . . but the cleft between the buttocks is not regarded as part of the anus or anal opening." *Id*. Therefore, we find that our holding in *Ringer* does not provide Pierre with relief in this instance.

¶23.	"When the Court reviews the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Richards v. State*, 283 So. 3d 1151, 1160 (¶36) (Miss. Ct. App. 2019) (quoting *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017)). "The relevant inquiry is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. at 1160-61 (¶36) (quoting *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008)). It is "only when the facts point so overwhelmingly in favor of the defendant that reasonable men could not have found,

---

[4] The supreme court has noted that "[u]nder the direct-remand rule, an appellate court may remand a case to the trial court for sentencing on a lesser-included offense where the greater offense was not proved, but the elements of the lesser-included offense were sufficiently met." *Hall v. State*, 187 So. 3d 133, 138 (¶18) (Miss. 2016). We note that jury instructions on the lesser offense of touching a child for lustful purposes were given on these counts.

beyond a reasonable doubt, [that] the defendant was guilty" that we will reverse and render the verdict. *Id*. at 1161 (¶36).

¶24.     Here, the trial court instructed the jury, with no objection by the defense, "that 'sexual penetration' is any penetration of the genital openings of another person's body by any part of a person's body. However, it need not be full penetration. Even the slightest penetration is sufficient to prove the crime of Sexual Battery." We find this instruction in accordance with Mississippi law and precedent. In *Walker v. State*, 262 So. 3d 560 (Miss. Ct. App. 2018), this Court held:

> [T]he emphasis on whether [the defendant's] penis was "inside" or "outside" of the victim is misplaced. Under Mississippi law, sexual penetration is a term of art, and its legal definition does not require that the defendant's penis be inside the victim in the colloquial sense. Instead, sexual penetration requires only penetration of the labia, the fleshy folds of skin surrounding the entrance to the vagina, and that penetration need only be slight. *In other words, a defendant rubbing his penis between the labia of the victim is sexual penetration as our law defines it.*

*Id*. at 565 (¶12) (emphasis added) (citation omitted). In *Austin*, the case cited by the trial court, we held that a victim's testimony that she felt "pressure" on her vagina from the defendant's penis, as well as the evidence that the victim had "burning during urination" and "vaginal swelling," was sufficient for a "reasonable jury [to] find beyond a reasonable doubt that [the defendant's] contact with [the victim], included some slight penetration of the labia." *Austin*, 282 So. 3d at 556 (¶37) (internal quotation marks omitted).

¶25.     Like the victim in *Austin*, May testified that when Pierre would rub his penis against her vagina, she "felt a lot of pressure and some pain between my legs and on my stomach area." Moreover, May noted in her testimony, "It finished *with him coming out of me*" and

11

ejaculating on her.  (Emphasis added).   We find this evidence sufficient to support the convictions, and we affirm Pierre's convictions and sentences.

¶26.  **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**